Grimke, J.
The statute prescribing the duties of county treasurers provides that a bond shall be given conditioned for the pay-54] ing over according to law all moneys which shall be *received for state, county, township, or other purposes; it also directs that each county treasurer shall take and subscribe an oath that ho will faithfully discharge all the duties of his office. It is evident, that the condition of the bond is not in its terms in conformity with the provisions of the statute; indeed, it is not denied that it is more comprehensive than the law requires; but it is contended ' *55 that inasmuch as the paying over according to law all moneys which shall come into his hands, is one of the duties of a county treasurer, and the very one for which bond is required to be given, that the bond, in this instance, does include the very condition prescribed by the statute, and that therefore no objection can be made to a recovery for a breach of that condition; in other words» that if the bond is not wholly void, the plaintiff is entitled to recover upon it for so much as is good, without touching the question whether so far as concerns the residue it is a good obligation or not.
It was once supposed, that if any part of the consideration or subject matter of a contract was contrary to a statute, the whole would be invalid; and a distinction was taken between the common law and a statute, so that if only a portion of a deed or bond was contrary to the common law, the unlawful part, if it cou'ld be separated from the rest, should be rejected, and the remainder of the instrument should stand good. But there are many instances in which the invalidity of part of a deed, by virtue of a statute» has been held not to destroy the whole ; and the remainder being legal and distinct has been upheld, there being no express words in the act to render the whole void. Thus, the mortmain act, 9 G. 2, c. 37, makes void all grants to charitable uses; but where a deed contained several limitations, one of which was void, as being to a charitable use, it was held that the other limitations were not affected, although included in the same deed. Thompson v. Pitcher, 6 Taunt. 359. So it was decided upon the property tax act, that a provision inserted in violation thereof in a deed, that the tax should not be allowed or deducted from payments to be made, shall not affect the validity of the rest of the instrument. Readshaw v. Balders, and Fuller v. Abbott, 4 Taunt. 57, *105, [55 113. The distinction, when the cases are closely and thoroughly examined, is not between the different effect and power of the common and statute law. It turns rather upon the difference between those instruments which, on the one hand, contain provisions and conditions which are merely illegal, and those which are malum in se, as well as contrary to the enactments of some positive law. The case of Thompson v. Pitcher, 6 Taunt. 359, already referred to, contains a full and clear exposition of the doctrine. C. J. Gibbes, referring to the argument, that if the deed was void as to part, it must be void as to the whole, says, “ if the *56 objection had been derived from the common law, it is admitted that would not be the consequence.” But he adds, “ it is urged that the statute makes the whole deed void; the truth is, however, there is no difference between a transaction void at common law and void by statute. If an act be prohibited, the construction to be put on a deed conveying property illegally, is that the particular clause which so conveys it is void equally, whether it be statute or common law. But it may happen that the statute goes further, and says that the whole deed shall be void, to all intents and purposes, and when that is so, the court must so pronounce, because the legislature have so enacted, not because the transaction prohibited is illegal."
The doctrine, that there is no difference between a transaction void at common law, and one void by the statute, may seem to be the promulgation of'an entirely new principle, and to contradict, in the plainest terms, decisions which had been previously made. But it is in reality supported by the earliest authorities, and no misapprehension could have existed as to their true import, if a full statement of the circumstances under which they were decided had always been given. Sergeant Williams, in a note to the case of Butler v. Wigge, 1 Saund. 66, n. 1, makes the distinction between the statute and common law. “ If a bond is- given,” he says, “ with condition to do a thing against an act of Parliament, and also to pay a just debt, the whole bond is void, because the letOer of the statute makes it void, and is a strict law,” and he cites 56] *Hob. 14. The words, “because the letter of the statute makes it void,” contains the true solution of the difficulty. Thus, in Malever v. Redshaw, 1 Mod. 35, which was debt upon a 'bail bond, Mr. Justice Twisden said he had heard Lord Hobart say, “ the statute is like a tyrant, when he comes he makes all void, but the common law is like a nursing father, making void only that part where the fault is.” But he added, that Lord Hobart had put this doctrine upon the ground that the statute then in question, directing sheriffs to take bond, had expressly declared, that if a bond was taken in any other form by color of their office, that then it should be void. The case of Harrison v. Cole, 8 East, 236, goes even further than this. It was there held, that notwithstanding the instrument (a bill of sale and mortgage of a ship) was declared to bo utterly null and void to all intents and purposes, yet that a covenant in the same instrument to repay the *57 money lent was good as a personal covenant. And this doctrine was subsequently ratified in Howe v. Synge, 15 East, 440; Greenwood v. The Bishop of London, 5 Taunt. 727 ; Wigg v. Shuttleworth, 13 East, 87. In Greenwood v. The Bishop of London, the' court founded itself upon the true distinction between those cases where the statute had declared the instrument taken in any other form than that prescribed to be utterly void, and those where it had declared it void only as to the illegal part. It was said, that “ it was not as in the case of usury, where the instrument was avoided by the positive and inflexible enactment of the statute, but it was left to the operation of the common law, which rejecting the illegal part leaves the rest untouched, if they can be fairly separated.” Thus, the supposed distinction between the peculiar efficacy of the common law and the disabling property of a statute, is altogether discountenanced, and a distinction much more important and sensible is erected in its place. If there are a few cases which seem to contradict this host of authorities, it can only be attributed to the fact, that the qualifications and limitations under which the principle was originally announced, have been entirely lost sight of. The English courts.have never failed to retrace their *steps, where it has appeared that a decision, or [57 even a series of decisions, have been inadvertently made, and without a thorough examination of the law. It was, I think, in Kingdom v. Nottle, 1 M. & S., that the court of king’s bench overruled the whole course of decisions which had been previously made, as to who should sue, the heir or the executor. The law had been understood and declared very differently for more than-half a century. But it had stood upon the single dictum of'. Comyn, for, on examining the authority to which he referred, it was found to contradict, instead of lending support to this dictum.
But the American authorities are as strong and convincing as- those which have been just referred to. The eases of the Postmaster-General v. Early, 12 Wheat. 136; Farrar & Brown v. United States, 5 Pet. 373; Supervisors of Allegheny County v. Van Campen, 3 Wend. 48, and the United States v. Bradley, 10 Pet. 343, all uphold the doctrine as delivered in the English courts. In Farrar v. Brown, where the suit, as in this case, was upon an official bond, the law of the United States had declared-that surveyors should give bond conditioned for the faithful discharge of the duties of their office, and for the faithful disburse *58 meut of public money. The bond sued upon contained only the first part of this condition. Judge Johnson, in delivering the opinion, remarks, that “ the court feel no difficulty in maintaining that where the conditions are cumulative, the omission of one can not invalidate the bond, so far as the other operates to bind the party.” The only difficulty which was felt, was, whether, when the law was express that both should be inserted, the one could be held to be comprised in the other. But for the language used in the statute, he adds, “the court has no doubt that the case would be open to proof that the disbursement of money was one of the known and habitual duties of the office, and included in the general words,” In the United States v. Bradley, 10 Pet. 343, which was also upon an official bond, and where the condition was not, in its terms, in conformity with the statute, it was held that there 58] was no solid distinction in cases like the *one before the court, between bonds containing conditions illegal but not malum in se, and those containing conditions illegal by the express prohibitions of statutes; that in each case the bonds are void as to such conditions as are illegal, and good as to all others which are lawful. The only difference between this case and the one before the court, is, that in the former the bond was conditioned for the performance of many separate duties, some of which were not contemplated nor prescribed by the statute, while the bond given by Robb is conditioned generally for the performance of the duties which are required by law. And it might be supposed that that ■part which is void for excess can not be severed from that which is good, as it can where the condition is divided into distinct parts, containing an unexceptionable part in one clause and an exceptional part in another. But to balk or hesitate here would be to fiy after the shadow after we had got possession of the substance. That part which is legal is marked out in the statute book itself, and is, therefore, as completely severable from the rest, as if tile two parts were separated in the condition of the bond. There can be neither mistake, confusion, nor injustice in so holding. The law is not so absolutely a cabalisti■cal science as to refuse to listen to the interpretations of good ■sense. The case put by the court, in Farrar v. Brown, is precisely this case. If, say they, the condition required by the law is not the condition contained in the bond, but is contained and comprehended within it, the bond would be as good as if it pursued the *59 very words of the statute. I think, then, there can be no doubt that this is a good statutory bond; if it were not, it would, undoubtedly, be a good bond at common law.
The only remaining question is, could Robb be considered as treasurer before the oath of office was taken ? If an officer be created by letters patent, he is a complete officer before he is sworn. This is almost the only way in which administrative offi- • cers are created in Great Britain; but it can not be denied that the creation of an officer by election is as high, if not higher, source of title to the officer. By the statute, 25 *G. 2, com- [59 monly called the test act, it is enacted, that all officers, civil and military, shall take the oaths of allegiance and supremacy, and in case of neglect shall be disabled to hold the said offices. Though these words are so very strong, yet it has been holden, that the acts of one under such a disability are good. 2 Mod. 193; 10 Mod. 185 ; Ld. Raym. 299.
But there are a class of persons who derive their office, even in England, from election. The officers of towns corporate are thus created, and by the statute of 13 Car. II, it’is declared, that in case certain oaths are not taken, the election shall be utterly null and void, yet the same authorities just cited have declared the same doctrine, which was considered applicable to the test act. It must be recollected, that the question is not made in an information, or quo warranto, where it would directly and properly arise; it is made after the state has consented to waive the objection,^after the principal has enjoyed the benefits and emoluments of the office, and for aught that appears, in consequence of the very bond which has been given. The taking of the oath can only be considered, as directory to the officer, and not as a condition precedent to his authority to act as treasurer. The demurrer to the declaration must then be overruled, and the demurrers to the second, third, fourth, fifth, and sixth pleas must be sustained.