# CHARLESTON.

GREENBRIER INDUSTRIAL EXPOSITION *v.* RODES.

(HOLT, JUDGE, absent.)

Submitted January 19, 1893.—Decided March 22, 1893.

1. CORPORATIONS—SUBSCRIPTION—ACKNOWLEDGMENT.

　　A person, who signs and acknowledges an agreement under section 6, c 54, Code for the formation of a corporation, becomes a subscriber for stock and is bound to pay for it, when the company afterwards becomes incorporated and organized.

2. CORPORATIONS—SUBSCRIPTION—ACKNOWLEDGMENT.

　　One, who signs but does not acknowledge such agreement, does not become a stockholder and is not bound for the subscription therein made, unless he in some way acknowledge the existence of the corporation.

3. CORPORATIONS—SUBSCRIPTION—ACKNOWLEDGMENT.

　　If such agreement be not acknowledged at all prior to the issue of the certificate of incorporation, the company does not obtain

corporate existence as to those, who by such preliminary agreement subscribe stock, and they are not compelled to pay such subscription.

4. CORPORATIONS—ACKNOWLEDGMENT—VARIANCE.

A fundamental variance in the certificate of incorporation from such preliminary agreement will relieve one, who by it subscribed stock, from payment thereof.

JOHN W. HARRIS for plaintiff in error cited, 1 Min. Inst. 572; Code c. 71, s. 2; 2 Price 93; 17 Am. St. Rep. 910; 12 Ind. 376; 26 Ill. 41; 40 Me. 172; 41 Me. 512; 37 Am. Rep. 910; 17 Ill. 54; *Id.* 429; 87 N. Y. 294; 56 N. H. 549; 116 Mass. 471; 16 N. Y. 45; 7 Barb. 157; 11 N. Y. 102; 14 N. Y. 336; 21 W. Va. 172; 32 Gratt. 146; 104 Ind. 401; 46 Ind. 142; 58 N. Y. 397; 50 Ind. 342; 83 Ind. 9; 89 Ind. 389; 46 Ind. 142; 25 Ind. 340; 80 N. Y. 219; 19 Ind. 213; 2 Rev. Stat. N. Y. (6th Ed.) 495, 500, 618; Code, c. 54.

BRANNON, JUDGE:

The Greenbrier Industrial Exposition as a corporation formed under chapter 54 of the Code sought by motion to recover from Robert C. Rodes a subscription to its capital stock, he having signed the agreement made under that chapter, preliminary to the incorporation of the company; and, the court having rendered judgment for the defendant the company brought this writ of error.

Rodes took no other part in the organization of the company, nor did he in any way recognize the corporation. His name was entered on the company books as a stockholder. He did not acknowledge the agreement for the formation of the company, though he signed it, and the certificate of incorporation issued by the secretary of state did not include him as a corporator. Does this exempt him from payment of his stock? Was his act of subscription completed so as to bind him for payment? He surely can not plead that, as the corporation had not yet, at the time of his signing the article, a legal entity or corporate existence, his subscription is not binding for want of another party to be contracted with, for the statute itself, which provides the mode of incorporation, authorizes one

to subscribe stock by signing the agreement of incorporation before the birth of the corporation, and certainly validates and makes such subscription have legal force by anticipation of the subsequent legal existence of the corporation. It makes the corporation, as to this point, existent. It does not do the useless act of authorizing the subscription only to be vain and abortive. The statute alone would answer this objection; and authority for it is everywhere abundant. Ang. & A. Corp §§ 523, 524; Beach, Corp. §§ 63, 64; Mor. Corp. § 59; *Cartwright* v. *Dickinson,* 88 Tenn. 476 (12 S. W. Rep. 1030); *Railroad Co.* v. *Dummer,* 40 Me. 172; *Anderson* v. *Railroad Co.,* 12 Ind. 376; *Griswold* v. *Trustees,* 26 Ill. 41; *Music Hall Co.* v. *Carey,* 116 Mass. 471; *Railroad Co.* v. *Dudley,* 14 N. Y. 336, 354; *Railroad Co.* v. *Mason,* 16 N. Y. 451. But that is not the question deciding this case.

But, though one sign such preliminary agreement for the proposed incorporation, he may withdraw before the company has come into corporate existence, as such a subscription is not a mutual contract between the subscribers. Beach. Corp. §§ 63, 563; 1 Wat. Corp. p. 166, § 47. How shall he withdraw? He can do so by erasing his name or by express withdrawal; but it seems to me he can do so by refusing or failing to do the final act required by section 8, c. 54, Code, which requires that the agreement "shall be acknowledged by the several corporators before a justice," *etc.* This is the act of authentication. The acknowledgment is the evidence that the incorporator recognizes his signature to the act, and desires it carried into execution by filing the agreement with the secretary of state, in order that a certificate of incorporation may be issued upon it. Without such acknowledgment such certificate could not issue. It is the delivery by each corporator of the agreement to the secretary of state to obtain such certificate. Without it, he has made no delivery; and if a certificate be issued, and without it there can be no corporate existence, he is no party to it; he has not asked for this last act that brings the corporation into being. 1 Wat. Corp. § 47.

When the statute says that the agreement shall be acknowledged "by the several corporators" it means each

one. Why does the statute require acknowledgment if not to attest the genuineness of the signatures, and the consent of each corporator to become such? His consent is manifested by two acts—signature and acknowledgment; and why dispense with that which is perhaps the more solemn and important, and certainly final, and conclusively evincing the party's consent to his full participation in the incorporation? Such corporations are formed under the general law. It requires certain formalities in order to bring the corporation into being, and the law is well settled that these formalities or steps must be at least substantially complied with. "A substantial compliance with all the terms of a general incorporation law is a prerequisite to the right of forming a corporation." "The proper authentication and recording of the articles of association have, for obvious reasons, been held to be conditions precedent to the right of forming a corporation under the general incorporation laws." "The article must contain everything in substance that the laws under which the corporation is organized prescribe." Mor. Corp. §§ 27–30, 67, 737–739; Beach, Corp. § 106.

Why, then, does not the omission of this acknowledgment prevent the agreement from effecting the organization of the corporation, so far as this corporator and his subscription are concerned? The point was decided in *Coppage* v. *Hutton*, 124 Ind. 401 (24 N. E. Rep. 112) where it is held that, where the statute requires that persons who desire to organize a corporation shall "make, sign, and acknowledge before some officer" a writing, *etc.*, the mere signing is not sufficient to complete the organization, but, in order to make valid and effective articles of association against all who sign, all must acknowledge them as the statute requires. One who simply signs the articles of association without acknowledging them, as the law requires, does not become a stockholder, and is not bound by his subscription." There a portion of the corporators acknowledged. As to those not acknowledging the Court said: "As to them the instrument is incomplete, and it is quite well settled that an incomplete subscription can not be enforced." See *Railroad Co.* v. *Mabbett*, 58 N. Y. 397;

*Reed* v. *Railroad Co.*, 50 Ind. 342; *Richmond &c.* v. *Smith*, 83 Ind. 9.

In *Indianapolis, etc. Co.* v. *Herkimer*, 46 Ind. 142, it was held that signing the articles does not create a corporation, but they must be acknowledged, filed, *etc.;* and until these steps are taken the corporation has no legal existence ; and when *nul tiel* corporation is pleaded, compliance with statutary requirements for the formation of a corporation must be shown. So in *Nelson* v. *Blakey*, 47 Ind. 38, and *McIntire* v. *Ditching Ass'n*, 40 Ind. 104. These cases involved the liability of corporators to pay their stock, like this case. We are not speaking of subscriptions made after incorporation, but of those made in the articles in contemplation of incorporation. To subscribers after incorporation the doctrine applies that dealing with a corporation as such they are estopped to deny its existence ; but subscribers before incorporation are not bound by that rule, and if they do not by subsequent acts acquiesce in the mode of incorporation by paying installments or otherwise treat it as a corporation, they may set up that the corporation is not legally incorporated, and that they are not liable, and may insist on the organization of a regular and legal incorporation. Cook, Stock, Stockh. & Corp. Law, § 186; *Dorris* v. *Sweeney*, 60 N. Y. 463 ; *Rickhoff* v. *Brown, etc. Co.*, 68 Ind. 388.

In *Taggart* v. *Railroad Co.*, 24 Md., 563, it is held that "the preponderance of authority in favor of a strict compliance with the provisions of the charter in cases of subscription prior to the organization of the company is such as is not to be disregarded" ; and that there is no doubt that in general a strict compliance must be shown with the provisions of the charter, or in this case the law. "There is a broad and obvious distinction between such acts as are declared necessary steps in the process of incorporation and such as are required of the individuals seeking to become incorporated, but not made prerequisites to the assumption of corporate powers. In respect to the former any material omission will be fatal to the existence of the corporation, and may be taken advantage of collaterally in any form in which the act of incorporation can be properly called in

question. In respect to the latter the corporation is responsible only to the government, in a direct proceeding to forfeit its charter." *Mokelumne, etc. Co.* v. *Woodbury*, 14 Cal. 424. See *Humphreys* v. *Mooney*, 5 Col. 284.

The above points were ruled mostly in cases against subscribers to enfore subscriptions.

Another objection to compelling Rodes to pay his subscription is that the agreement he signed provided that the corporation should expire December 1, 1910, while the certificate of incorporation makes it expire December 1, 1919. This seems to be a material variance. We can not say that the element of the duration of a corporation is not a material and important one. The statute makes it an element of the agreement for the formation of the corporation, and gives its corporators power to fix it; and a Court ought not to disregard their act. I might be willing to enter into a corporation to last, as the corporators in this instance proposed, twenty years, but unwilling to participate in one to continue twenty nine years. This certificate postponed the winding up of the company and the division of its assets nine years beyond the period contemplated by the agreement, and endangered the solvency of the corporation and the value of the stock by extending its business that term.

It is argued that the stockholders might at any time sooner close its business. They could by a certain vote, but Rodes could not alone do so. This certificate was accepted by the corporation, not rejected. Beach, Corp. § 107, lays down a legal proposition sustained by reason and authority: "Another valid ground upon which the subscriber or stockholder may be relieved from the obligation of his contract or withdrawal from membership is the fact that there has been a fundamental change in the nature of the corporation, whereby its rights and liabilities are materially affected." See Cook, Stock, Stockh. & Corp. Law, § 502, note; opinion in *Clearwater* v. *Meredith*, 1 Wall. 25; *Champion* v. *Railroad Co.*, 35 Miss. 692; *Railroad Co.* v. *Elliott*, 10 Ohio St. 57; *Com.* v. *Cullen*, 53 Amer. Dec. 462, note; *Bank* v. *Charlotte*, 85 N. C. 433.

It seems to me that a departure in the certificate of

incorporation from the proposal of the corporators would be more material, stronger to relieve the corporator, than an alteration in the charter after its issue.

I am of opinion that the judgment of the Circuit Court for the defendant is right, and ought to be affirmed.

AFFIRMED.