# CHARLESTON.

GREENBRIER INDUSTRIAL EXPOSITION *v.* OCHELTREE.

Submitted January 26, 1898—Decided April 6, 1898.

1. TRIAL—*Exceptions to Evidence—Retirement of Jury.*
   An exception to improper evidence, in a trial before a jury, must be taken before the retirement of the jury. (p. 632).

2. CORPORATIONS—*Increase of Capital Stock—Board of Directors.*
   Under section 23, chapter 53, Code, the increase of capital stock of a corporation is entirely under the control of the board of directors for the time being; and the only limitation upon the board in respect thereto is "that the maximum capital be not exceeded." (p. 633).

Error to Circuit Court, Greenbrier County.

Action by the Greenbrier Industrial Exposition against J. M. Ocheltree. Verdict for plaintiff. New trial denied, and judgment entered on the verdict. Defendant brings error.

*Affirmed.*

L. J. WILLIAMS, for plaintiff in error.

J. W. ARBUCKLE, for defendant in error.

MCWHORTER, JUDGE:

The Greenbrier Industrial Exposition filed its notice in the circuit court of Greenbrier county against J. M. Ocheltree, to the effect that on the first day of the next term of the said court, to be held on the 1st day of November, 1895, it would move said court for judgment against him

for one hundred dollars and interest, the amount of a share of the capital stock of said corporation subscribed for by him, which notice was served October 3, 1895. On the 12th day of November, 1896, the defendant appeared, and pleaded *non assumpsit*; and a jury was impaneled and sworn, and, having heard the evidence, found for the plaintiff, and assessed its damages at one hundred and forty-seven dollars and eighty cents; and the defendant moved the court to set aside the verdict and grant a new trial, of which the court took time to consider. On the 19th day of the same month the court overruled defendant's motion and rendered judgment upon said verdict. The defendant then moved the court to set aside the judgment and give him a new trial, because the same was contrary to the law and the evidence, which motion was also overruled, to which ruling and opinion of the court the defendant excepted, and tendered his bill of exceptions, which was signed, and made part of the record. The plaintiff gave in evidence a certificate of incorporation, dated November 3, 1890, which included the agreement of the corporators to become a corporation by the name of the Greenbrier Industrial Exposition, "for the purpose of advancing the agricultural and mechanical interests of this section of the state, and for the competitive exhibition of farm products, live stock, and trials of speed, and to promote the general interests of the community, and all other purposes for which such organizations are intended, and acquiring, by lease or purchase, real estate for exposition grounds, buildings and other necessary improvements on said exposition grounds, by purchase or otherwise, and for holding the said exhibitions at or near Lewisburg, Greenbrier county, W. Va., which corporation shall keep its principal office or place of business at Lewisburg, in the county of Greenbrier and state of West Virginia, and is to expire on the 1st day of December, 1919. And, for the purpose of forming the said corporation, we have subscribed the sum of $3,000.00 to the capital thereof, and desire the privilege of increasing the said capital by the sale of additional shares from time to time to $20,000.00 in all." The capital was divided into shares of one hundred dollars each. Plaintiff also introduced in evidence the minutes of a meeting of the

board of directors, which had been duly organized, held on the 7th day of February, 1891, containing, among other things, an order to increase the capital ctock of the corporation to twenty thousand dollars, by sale of additional shares, and appointing John J. Echols as agent for the corporation for the sale of said additional shares of stock, and authorizing him to collect ten per cent. thereof; and also a paper similar to the agreement contained in the charter, except that the corporation should expire on the 1st day of December, 1910, instead of 1919, which was signed by appellant for one share.   John J. Echols, as a witness, testified that he was a stockholder, and one of the board of directors; that Mr. Ocheltree signed the paper offered in evidence about the last of March, 1891, in his mill at Maysville; that witness explained to Ocheltree that the board of directors had voted to increase the stock to twenty thousand dollars, and had authorized him to sell it, and get as many people as possible interested in it.   And, in answer to a question asked by the court, Echols said that Mr. Ocheltree signed the paper to show that he bought one share of stock.   Witness said that he did not tell Ocheltree that he would not have to pay more than twenty per cent. or twenty-five per cent. but told him, as he told others, that he did not think they would need more than fifty per cent.   J. W. Arbuckle testified that he was secretary in 1890 and 1891, and while he was secretary he called on the stockholders, in person or by letter, for the assessments made upon their stock; that no part of the stock of Ocheltree had ever been paid, and the whole was then due and unpaid; and James C. McPherson testified that he was secretary in 1892 and 1893; that he requested payment, in person or by letter, of the assessments made on the stock; that he wrote to the defendant Ocheltree, demanding the payment of his assessments, but received no answer to any written demand for payment of said assessments; that he saw Ocheltree in Lewisburg, and asked him for his assessments; he said that he did not have the money to pay them.   On cross-examination, witness said Mr. Ocheltree did not tell him that he owed it or would pay it.   Mr. Ocheltree, on his own behalf, testified that he subscribed his name to the paper offered

in evidence by the plaintiff; that he did not know at the time he subscribed that a charter of incorporation had been granted to the plaintiff; that he never regarded himself a stockholder, and never paid anything to said company; that Echols told him that he would not have to pay more than twenty per cent. or thirty per cent. of his subscription; stated that he was then and had been a subscriber to the Greenbrier Independent for twenty years, and he usually read the paper, but did not read all the advertisements. Ocheltree did not deny the statement of Echols that at the time he called on him for the subscription, and that he signed the paper, Echols explained to him that the board of directors had voted to increase the stock to twenty thousand dollars, and had authorized him to sell it, and get as many people as possible interested in it. Plaintiff gave in evidence, also, the notice of the meeting of the stockholders to be held on Tuesday, November 25, 1890, at 12 o'clock, at the court house, in Lewisburg, for the purpose of organizing and electing a board of directors, which was published in the Greenbrier Independent on the 6th day of November, 1890, and continued in said paper two weeks, and also the proceedings of the meeting, showing the organization on the said 25th of November, 1890.

On motion of the plaintiff, the court gave the jury four several instructions, numbered 1, 2, 4, and 5, as follows: "(1) If the jury believe from the evidence that the defendant, Ocheltree, subscribed for one share of the capital stock of the defendant company, standing upon its books as having been subscribed for by him, and that said subscription was made after the organization of said corporation, on the 25th day of November, 1890, and that the said Ocheltree knew that the said company had been organized at the time of subscription, then there is an admission that his subscription was authorized, and binding upon him. And it makes no difference whether or not the date of the expiration of the charter is different from the date given in the original subscription paper. (2) The court instructs the jury that a person, to become a subscriber to a corporation in existence at the time, need not make the subscription in writing, to bind him. (4) The court instructs the

jury that the corporation had power to increase its capital stock by the sale of additional shares of stock, and that the purchasers of such additional shares are bound to pay for such shares, not as subscribers, but as purchasers of the stock so purchased. (5) The court instructs the jury that, when the defendant undertakes to show an inducement to him to subscribe for the share of stock sued for, the burden shifts to him, and he must prove the inducement by a preponderance of testimony." To the giving of each of these instructions the defendant objected, which objections were overruled and the instructions given, and the plaintiff excepted. The defendant then asked the court to give the following instructions, numbered 1 and 2: "(1) The court instructs the jury that if they believe from the evidence that the defendant had no knowledge of the corporate existence of the plaintiff at the time he signed the agreement, and signed for the purpose only of promoting the enterprise, then they must find for the defendant. (2) The court instructs the jury that if they believe that the defendant subscribed to the capital stock of the company under the resolution passed by the board of directors increasing the capital stock to $20,000, and that said plaintiff failed to increase its capital to that amount, then they must find for the defendant." To the giving of each of which the plaintiff objected, and as to the first instruction the objection was overruled and the instruction given, and as to the second the objection was sustained and the instruction refused, to which ruling defendant excepted.

The defendant obtained from this Court a writ of error, and assigned the following errors: "(1) That the court erred in permitting the testimony of J. J. Echols, in rebuttal, in answer to a question asked by the court, that Mr. Ocheltree signed the paper to show that he had bought one share of stock, which was attempting to explain a writing by parol evidence totally at variance with said writing; the writing signed being a preliminary agreement to become a member of a corporation to be formed; not knowing that the charter had been granted, and the corporation already organized. That there is a material variance between the preliminary agreement and the char-

ter.   By the agreement the charter is to expire on December 1, 1910, and by the charter it is made to expire in the year 1919.   That Mr. Ocheltree did not acknowledge the paper, never attended any of the stockholders' meetings, and never regarded himself as a member of the corporation.   (2) The court erred in refusing to give defendant's instruction No. 2.   (3) It was error for the court to give plaintiff's instruction No. 2, even though it stated the law correctly—which is not admitted,—and it should not have been given, because there was no evidence to support it, and it was misleading to the jury.   Instruction for plaintiff No. 4 is also wrong, for the same reason that it was error to refuse defendant's instruction No. 2.   Plaintiff's instruction No. 5 is also erroneous, because there is no evidence given by the defendant in support of it,—that defendant did not at any time during the trial attempt to prove an inducement.   The inducement is plainly inferable from the plaintiff's evidence.   And, furthermore, said instruction assumed that the defendant subscribed for the share of stock (a fact which he disputes), and that he sought relief from his subscription by showing that he was induced to subscribe by a misrepresentation of facts by the party who secured his signature to Paper A.   And for this reason, also:   That the instruction is misleading to the jury, and prejudicial to defendant.   The defendant signed the agreement for the purposes stated in it, and not as a purchaser of stock.   So far as his knowledge then extended, by which his rights and liabilities are to be determined, neither the corporation nor its stock had any existence.''

As to the first assignment:   J. J. Echols was properly authorized by the board of directors to sell the additional stock.   He applied to appellant about four months after the organization of the corporation, in his mill, at Maysville, and stated to him that the board of directors had voted to increase the stock, and had authorized him to sell it, and to get as many people as possible interested in it. Appellant does not deny this, although a witness on the stand, on the trial of the case; and although he states that he knew nothing of the organization, or that the charter had been granted, he must have known, or might have

known from the explanation given by Echols, that the corporation had been organized by the election of a board of directors. Notice of the meeting of the stockholders for organization had been published at least two weeks in his county paper, and the organization had taken place at the court house of his county four months before the application to him to subscribe this stock; so that whether he knew or did not know of the existence of the corporation, and its organization, some four months prior thereto, was a question purely for the jury. There was certainly evidence tending to show that he must have known it. If the signing of this paper had been prior to the organization of the corporation, and he had never done anything to recognize the corporation, nor acknowledge the paper, it could not have been held a subscription to the stock, nor could he have been bound to pay for it, as held in the case of *Exposition* v. *Rodes*, 37 W. Va. 738, (17 S. E. 305). The testimony of Echols, in answer to the question of the court, that "Mr. Ocheltree signed the paper to show that he had bought one share of stock," may have been improper to go to the jury, but, no exception having been taken thereto, all objection must be held to have been waived. Exception could only have been taken before the retirement of the jury. *Gilmer* v. *Sydenstricker*, 42 W. Va. 52, (24 S. E. 566). The paper signed by appellant, while it purports to be an agreement of the parties signing it to become a corporation by the name of the Greenbrier Industrial Exposition, for the purposes therein stated, is the paper upon which all subscriptions of stock were subscribed after the organization of the corporation and the increase of the capital stock. And, while the paper alone would perhaps not be sufficient to bind him to his subscription, the explanation which he received from Echols in relation to what he was doing, and the purposes for which the subscription was being taken, which explanation is undisputed by him, is sufficient to make it clearly a question for the jury as to whether appellant was not in good faith subscribing to the capital stock of an organized and active corporation. Appellant cites the case of *Exposition* v. *Rodes*, 37 W. Va. 739, syl. point 4, (17 S. E. 305), as to the fundamental variance in the paper signed (which paper is the same in that

case and this) and the certificate of incorporation; but the record shows that Rodes had signed it before the organization of the company, did not acknowledge it, and took no part in its organization, and did not in any way recognize it afterwards, and never completed his subscription (*Id.*, 37 W. Va. 740, 17 S. E. 305), while the subscription by appellant, if such it is, was four months after the organization of the corporation, and in purchase of its stock, which was on sale on the market.

The second assignment is that the court erred in refusing to give instruction No. 2 on behalf of defendant. Appellant says: "If the court should hold that the defendant purchased one share of stock, he must be understood as purchasing it on condition—implied, at least—that the full amount of capital stock, to wit, $20,000, should be sold, unless he afterward waived this condition." 23 Am. & Eng. Enc. Law, 864: "Subscribers to increased stock have been held liable where the full amount of the increase was not subscribed for." 1 Cook, Stock, Stockh. & Corp. Law, § 288: "A subscriber for increased stock cannot defeat an action to enforce his subscription by setting up the failure of the corporation to obtain subscriptions for the whole of the authorized increase." *Delano* v. *Butler*, 118 U. S. 634, (7 Sup. Ct. 39). Section 23, chapter 53, Code, provides: "Before a corporation is organized, shares may be disposed of as prescribed by the sixteenth section of chapter fifty-four of this Code, or by the charter. After it is organized, the disposal of additional shares to increase the capital stock shall be subject to the order and direction of the board of directors for the time being, so that the maximum capital be not exceeded." Section 25 provides; "At least ten per cent. of the par value of each share shall be paid at the time of subscription, and the residue as required by the board of directors or the commissioners having control of the subscription." This clearly indicates that whatever shares of the increase, or stock to be sold after organization, are sold, may be required to be paid for by subsequent assessments made on stock so sold; and under section 23 the increase of stock is entirely in control of the board of directors for the time being, and the only limitation upon the board in respect thereto is "that the maxi-

mum capital be not exceeded." And although section 26 says that "no stock shall be regarded as taken, or the person subscribing therefor considered entitled to the same, until the first installment is paid thereon," in *Railroad Co.* v. *Applegate,* 21 W. Va. 172, syl. (point 3), it is held that "a subscriber to the stock of a corporation cannot escape his liability to pay his subscription on the ground that he did not pay the sum required to be paid by the statute at the time he subscribed."

Third assignment: That "it was error for the court to give plaintiff's instruction No. 2. Even though it state the law correctly, which is not admitted, it should not have been given, because there was no evidence to support it. It was misleading to the jury. Instruction for plaintiff No. 4 is also wrong, for the same reason that it was error to refuse defendant's instruction No. 2." There was evidence tending to show the purpose and intention of the appellant to subscribe to this stock, sufficient, at least, to be passed upon by the jury. "When an intent to become a subscriber is manifested, the courts incline, without particular reference to formality, to hold that the contract of subscription exists. It is, as in the case of other contracts, very much a question of intent. Formal rules are, for the most part, disregarded. And in general a contract of subscription may be made in any way in which other contracts are made. Any agreement by which a person shows an intention to become a stockholder is sufficient to bind both him and the corporation." 1 Cook. Stock, Stockh. & Corp. Law, § 52. Can it be questioned that, with his name on the books of the corporation as a subscriber, he was entitled to his certificate of stock, and, by complying with the by-laws, could have enforced all his rights as a stockholder? "In respect to the time when the contract of subscription is deemed to be complete, a distinction exists between cases where the proposition for the subscription comes from the company to the subscriber, and where it comes from the subscriber to the company. In the former case a proposition by or on behalf of the company, and an assent thereto by the subscriber, render the contract complete." 1 Thomp. Corp. § 1179. In the case at bar the proposition came from the

company, through its authorized agent, Echols; and my opinion is that the question as to whether it was the intention of appellant to subscribe, and whether he did subscribe, was one of fact, for the jury to find from the evidence. The jury having found that appellant did subscribe, I think, from the evidence and the law, they were justified in their finding, and I am not inclined to disturb th    rdict. The judgment must be affirmed.

*Affirmed.*