# WHEELING.

## KIMMINS USE, &C., v. WILSON

### July 31, 1875.

1. When there has been a trial before a jury and a verdict, on a motion to set aside the verdict and grant a new trial, because the verdict is contrary to the evidence, if there be inconsistency, all the testimony, and all the inferences from it, which might be drawn by a jury, without error, that tend to sustain the verdict, must be accepted, and such of the testimony, as directly conflicts with the former, should be discarded.

2. When an agreement to become stockholders in specified shares, in a partnership, and to pay the amounts subscribed, is signed by a number of persons with the number of shares and the aggregate amount thereof annexed to their names, though no promise is named in the agreement, in effect, each party promises to the others, to pay the amount; and the promises of the others are a consideration for the promise of each, and the parties are sufficiently definite.

3. When such subscribers organize a company and appoint a treasurer, and, by agreement of the parties one makes a promissory note, payable to the person appointed treasurer, for his unpaid share, the previous liability and agreement constitute an adequate consideration for the note.

4. When one of a number of persons who, each, with the others, agrees to contribute money and form a partnership for a specified purpose, represents to another the existence of facts on which the latter relies, but which do not exist, the other parties are not bound by such representations, and the contract is not thereby invalidated, as between the party deceived and the others.

5. When the payee of a note, made for the benefit of a company for which he is treasurer transfers it to another, and an action is brought in the name of the former for the benefit of the latter, though on the trial the payee testifies that he did not authorize the suit to be brought in his name, this should not influence the verdict or prevent a recovery.

1875.
June Term.

*Supersedeas* to a judgment of the circuit court of Marshall county, rendered on the 12th day of October, 1872, in a suit then pending in said court between Abner R. Kimmins, who sued for the use of George W. Richmond, plaintiff, and James T. Wilson, defendant. The *supersedeas* was awarded on the petition of the defendant below. The other material facts appear in the opinion of the Court.

The Hon. Thayer Melvin, judge of said circuit court, presided at the trial below.

*R. C. Holliday* for the appellant.
*J. L. Parkinson* and *J. Dallas Ewing* for the appellee.

HOFFMAN, JUDGE:

A. R. Kimmins suing for the use of George W. Richmond, on the 21st day of March, 1871, instituted his action of debt in the circuit court of Marshall county, and afterwards filed his declaration, in which he demanded $335, which he alleged that Wilson owed him, and alleged that on the 8th day of September, 1866, Wilson made his note in writing, by which he promised, on or before the first day of October in the same year, to pay to Kimmins the sum first mentioned, for value received; but that Wilson had not done so.

Wilson pleaded *first*, that he was not indebted:—He pleaded *secondly*, that in August, 1866, Isaac Richmond and his brother George W. Richmond were actively engaged in getting up an organization called the Dallas Oil Company, to operate in the oil business, in Wood county, West Virginia; that Isaac Richmond presented ed to Wilson an oil lease or article of agreement, which recited, substantially, what follows: "The undersigned agree to become stock holders in a property located on White oak, close to the Great Hope, Barles and other's wells. This lot is well located for boring purposes,

74

and contains over one and a half acres. It has a good ten horse power portable engine, engine house and shanty furnished, lot of boring tools, blacksmith tools, 500 feet of tubing with pump and well 382 feet, with a 30 barrel tank, with several barrels of oil. The machinery, well, all in good condition; the lease runs for fifteen years. The whole stock is divided into twenty shares of equal value, each share is put at a cost of three hundred and thirty-five dollars ($335) per share. Should the Company elect to bore another well, it is hereby understood that Blair & Gibbens are not to be assessed in pumping the oil, and in all other expenses they bear their proportion of the expenses. We can take this property and *stock* it at pleasure, for a sum vastly exceeding this cost. Money is to be paid when subscribed:" That Isaac Richmond stated to Wilson that the well was a thirty barrel well, that he had seen it run a thirty barrel tank full per day, and he solicited Wilson to go into the oil lease business, but Wilson refused to do so, till Isaac Richmond told him, that if he did go into the business, he should not loose anything ; that the law required them to make up a full company ; that he, Richmond, wanted Wilson's name to help fill up the company; that it was understood that Wilson had not money in hand to the amount of any material part of the shares. And that Wilson relying upon Isaac Richmond's representations as true, not himself having money, made and signed the note to Kimmins who was the secretary of the Dallas Oil Company, then organized, (notes being required to be given, when money was not paid for shares,) for one share of stock so taken: That Wilson was induced to enter into the contract and make the note, by reason of Isaac Richmond's representations ; and that these were all false: That Kimmins and George W. Richmond were long ago advised of the foregoing facts: And that there was a total want and failure of the conditions of the contract, to the full amount of the note, as of the time when it was made, and always since ; for that

the well was not a thirty barrel well, that it had never run a thirty barrel tank full in a day, but that it was almost a total failure and wholly worthless ; and that the implements were of no value otherwise than in a good oil well: And Wilson pleaded *thirdly*, inserting instead of the name of Isaac Richmond, that of George W. Richmond, otherwise substantially the same facts as in the *second* plea.

Each of the last two pleas was verified by the affidavit of Wilson that the matters set forth in the plea were true, as to his knowledge, information and belief.

To each of the three pleas Kimmins replied generally.

There was a trial before a jury and a verdict for Kimmins for the use of G. W. Richmond. Wilson moved for a new trial, which was refused, and he excepted, and the facts in part, and evidence in part, were certified.

As appears by the record, the agreement recited in the *second* plea was signed by Blair & Gibbens, with four shares, of the aggregate value of $1340, written opposite their names and by George W. Richmond, Isaac Richmond, A. R. Kimmins, James T. Wilson, Daniel Dague and eight other persons, with one share of the value of $335, written opposite the name of each.

The evidence proves the following facts:

G. W. Richmond, who resided in Clarksburg, West Virginia, arranged with Blair & Gibbens, with reference to the lease mentioned in the agreement, and with a firm which, under a contract with Blair & Gibbens, had sunk the well then in operation and owned the property, for the purchase of their interest, engine and other property mentioned in the agreement, upon the condition that at or before the expiration of sixty days, a company should be formed to take the lease and other property upon the terms suggested. The price of the lease does not clearly appear ; but the price asked for the well, engine and other property was $3500. The agreement was signed by Blair & Gibbens, who took four shares of stock, and

by George W. Richmond, who took one share; and then it was sent by George W. Richmond to his brother, Isaac Richmond, in Marshall county, with the request that, if he had the time, he would obtain the desired number of subscribers; or if not, that he would hand the papers to some one in his neighborhood who would attend to it. A sufficient number of subscribers having been secured, on the 6th day of September, 1866, the Company was formed and organized—called the Dallas Oil Company— and Dague was elected president and Kimmins, secretary and treasurer. A part of the subscribers paid their subscriptions before the organization; but, under an agreement with the other parties, on the same day, Wilson and some others, made their note to Kimmins for their respective subscriptions.

According to the original understanding of the parties, after the organization, at the instance of the Company, Dague, the president, and Isaac Richmond went to the premises and afterwards directed George W. Richmond to close the contract with the owners of the land and property; and he did so. They paid $1,500, and executed their note for $2,000 for the engine, fixtures, &c., and G. W. Richmond paid $1,000 and executed his note for the residue of the amount payable on the lease; and Blair & Gibbens made the title to the Company. And, with the understanding on Richmond's part that the notes for unpaid subscriptions should be turned over to him, he paid the amount of that note. The testimony of George W. Richmond is that Wilson agreed with him that if he would advance the amount of Wilson's subscription the latter would pay to Richmond the amount of his note for $335—though there was testimony tending to contradict this. The evidence proves that this note, with others, was afterwards turned over by Kimmins, as secretary and treasurer of the Company, to George W. Richmond, for whose use it was understood the money was to be paid. Assessments were twice made for $10, for working purposes, and paid. Kim-

mins and George W. Richmond were elected superintendents, and acted as such in boring and operating the well.

The well, premises, fixtures, &c., were, at the time of the formation of the Company and subsequently, in the condition described in the agreement. There were, in the immediate vicinity of the property, wells producing oil; and in the opinion of witnesses it was good oil territory, and at the price given was cheap. But it turned out that the well worked by the Company produced but little oil, and that was of inferior quality. The investment was found to be unremunerative, and after about a month the well was abandoned and the fixtures left upon the premises.

Isaac Richmond represented to Wilson that he had seen thirty barrels of oil pumped from the well in twelve hours; that the oil was of superior quality, and that the well was a paying one; and that the money payable by the note given by Wilson could be made out of the oil before payment would be required.

The testimony of George W. Richmond was that Isaac Richmond was not his agent, though there was evidence tending to prove that he was such.

On the trial Kimmins testified that Wilson never received any consideration from him for the note; that it was executed to him as secretary and treasurer of the Company; that the legal title was not in him, and that he had not ordered the suit to be brought.

As there was no demurrer to the second and third pleas, and neither was entirely proven, it is sufficient to examine the evidence within the scope of the pleadings, and consider the facts which it proves, or is sufficient to prove. But where there is inconsistency, the testimony and all the inferences from it which might be drawn by a jury, without error, that tend to sustain the verdict, should be accepted, and such of the testimony as directly and irreconcilably conflicted with the former should be discarded.

1875.
June Term.

Kimmins,
use, &c.
v.
Wilson.

It is urged on behalf of Wilson, that, as there was no promise named in the original agreement signed by him and others, that agreement furnished no consideration; and Kimmons paid no consideration for the note made by Wilson to him as trustee and treasurer; and that, therefore, Kimmins could not maintain an action thereon for the benefit of himself or the Company or George W. Richmond: That if the consideration were sufficient, Isaac Richmond's representations to Wilson were false, and vitiated the contract: And finally, that the suit was not authorized by Kimmins and could not be brought in his name by George W. Richmond.

By the original agreement, signed by the parties, each, in effect, promised to the others, to pay, for the benefit of all, the sums of money stated after their names. These mutual promises constituted a valid consideration, the one for the other; and the contract was binding— whether it might be enforced in law or only in equity. Sewell, C. J. in *Phillips Limerick Academy v. Davis*, 11 Mass., 117; *Myrick v. French*, 2 Gray, 420; *George v. Harris*, 4 N. Hamp., 533; *M'Auley v. Billenger*, 20 Johns., (N. Y.) 89; *Reformed Protestant Dutch Church v. Brown*, 29 Barb., (N. Y.) 335; *McDonald v. Gray*, 11 Iowa, 508.

In order to carry the initiatory contract into effect, the parties thereto met and organized themselves as the Dallas Oil Company, a private partnership, and appointed Kimmins, the plaintiff, secretary and treasurer. Some of the parties severally paid in hand the amounts they had, respectively, promised to pay; and by the agreement of the parties, expressed or implied, Wilson and others, severally executed their notes payable to Kimmins for the amounts which they severally had before promised to pay. Doubtless the parties agreed that these moneys should be held and used by Kimmins, who was secretary and treasurer of the Company, for the benefit of all; and Kimmins, expressly or by implication, consented to do so. The previous liability of

Wilson, with the agreement of the parties that he should make his note to Kimmins for such purpose, constituted an adequate consideration for the note of Wilson to him for the amount of the liability, and he, or the other members of the Company, or any other to- whom the right was transferred, might bring a suit thereon, in the name of Kimmins, against Wilson, and recover that amount. *Siter, Price & Co. v. McClanachan*, 2 Gratt., 280; *Richeson v. Richeson*, 2 Gratt., 497; *Wickham & Goshorn v. Lewis Martin & Co.*, 13 Gratt., 427; *Evans, Trustee, v. Greenhow*, 15 Gratt., 153; *Moses v. Trice*, 21 Gratt., 556; *Farmington Academy v. Allen*, 14 Mass., 172; *Bryant v. Goodnow*, 5 Pick., (Mass.) 228; *Trustees, &c., in Hanson, v. Stetson*, 5 Pick., (Mass.) 506; *Warren v. Stearns*, 19 Pick., (Mass.) 73; *Thompson v. Page*, 1 Metc., (Mass.) 569; *Steene v. Aylesworth*, 18 Conn., 244; *Robinson v. March*, 4 Ill; 1 Chit. on Cont., pp. 32, 33, note, &c., and other cases cited on pp. 50, 51 and note 6.

Moreover, according to the agreement of the parties, a large portion of the moneys agreed to be paid was, in fact, paid to the agents of the Company, and they paid large sums to the owners of the leased territory, as well as the property purchased, and George W. Richmond, himself, in behalf of the Company, paid large sums to these owners; and they, thereby, procured the lease of the territory and transfer of the property, and caused all to be vested in Wilson and the other partners for their own benefit.

Against the testimony of George W. Richmond and the verdict of the jury, it cannot be held that Isaac Richmond was in fact the agent of the former. The relation of Isaac Richmond, in the negotiation that resulted in the execution of the contract between all the parties, and the organization of the Company, was as antagonistic to George W. Richmond as it was to Wilson. Certainly that relation was not such as to bind others than himself, or to taint the contract with fraud or misrepresentation, as perpetrated by them, actually or con-

structively. And Isaac Richmond's conduct, only in his own behalf, could not so vitiate the contract made by him with the other parties, as to impair or destroy its validity between them: Though, if fraudulent and injurious, it might subject him to the payment of damages. *Miller v. Campbell*, 3 A. K. Marsh., (Ky.) 526; 5 Rob. (New) Pr. 571, 593 *et seq.*, and cases cited.

But the material facts set forth in the agreement were true. In the immediate vicinity of the well were other oil producing wells; and in the opinion of witnesses, the territory in question was good oil territory, and cheap at the price paid for it. And most of the representations made by Isaac Richmond to Wilson are not disproved. The only representations that may seem to be erroneous are, that the well then upon the premises was a paying one, and that the oil was superior in quality. This was so manifestly a matter of opinion, that it cannot be presumed to have furnished, to any considerable extent, the ground of the action of Wilson; and though he alone testifies on this subject—he does not suggest that Richmond's representations induced his action. The well, however, at the time referred to, when the negotiation was made, may have been such as represented, and yet, soon after, may have failed to produce any but inferior oil, in quantities unremunerative. Beyond these representations there is no evidence of fraud. Under the circumstances they do not invalidate or affect the original contract or the note.

It would seem that the Company authorized Kimmins, as their secretary and treasurer, when George W. Richmond should have paid the note for $2,000, executed by Dague, the president, and himself, to transfer the unpaid notes for shares, to Richmond. He, Richmond, testifies that Wilson expressly agreed that if Richmond would advance the amount of Wilson's subscription—for which he made the note—he would pay the amount. And Richmond did pay the $2,000, which covered Wilson's subscription; and Kimmins, as secretary and treasurer of

the Company, did transfer the note to Richmond : And
Richmond, in the name of Kimmins, sued Wilson on
the note, and Kimmins made no objection thereto.

1875.
June Term.

Kimmins,
use, &c.
v.
Wilson.

The testimony of Kimmins, on the trial, that he had
not authorized the suit to be brought in his name, could
not tend to bar the recovery. If, as between the other
members of the Company and Richmond, the latter had
not the right to the money, Wilson could not, on the
trial, without notice, show that fact to prevent a recovery, for the benefit of the person who ought to receive it.

The motion for a new trial was properly overruled,
and the judgment of the circuit court was right and is
affirmed with damages and costs.

Haymond, President, and Moore, Judge, concurred.

JUDGMENT AFFIRMED.