### DETERMINHD BY THE

# SUPREME COURT OF APPEALS

#### OF

## WEST VIRGINIA

---

### CHARLESTON

WINDSOR HOTEL COMPANY v. SCHENK.

Submitted February 23, 1915.   Decided March 16, 1915.

1. CORPORATIONS—*Subscription—Variation and Effect.*
   A subscription to the capital stock of a corporation subsequently to be formed, not revoked before the organization thereof, is valid but conditional. (p. 3).

2. RIGHT TO REVOKE SUBSCRIPTION.
   Quaere, whether such a subscription is revocable? (p. 5).

3. CORPORATIONS—*Organization—Meeting of Stockholders—Right of Subscriber to Participate.*
   An informal, antecedent subscriber to the stock of a corporation subsequently to be formed, is entitled to an opportunity to pay the initial statutory installment of his subscription before organization and to participate in the first meeting of the stockholders held for the purpose of organization. (p. 5).

4. SAME—*Antecedent Subscription—Release of Subscriber—Failure to Tender Privilege.*
   Tender of such privileges is a condition of the subscription and non-performance thereof by the incorporators releases the subscriber. (p. 5).

5. SAME—*Antecedent Subscription—Statutes.*
   Though such an antecedent subscription does not make the subscriber a technical or statutory stockholder, it is made in contemplation of the constating laws of corporations and to be executed and carried into effect under them, wherefore they form parts of the contract of subscription. (p. 6).

(LYNCH, JUDGE, absent.)

Error to Circuit Court, Ohio County.

Action by the Windsor Hotel Company against Otto Schenk. Judgment for defendant, and plaintiff brings error.

*Affirmed.*

· *T. S. Riley,* for plaintiff in error.

*Charles J. Schuck* and *Caldwell & Caldwell,* for defendant in error.

POFFENBARGER, JUDGE:

The defendant, Schenk, having refused to pay assessments on an informal subscription by him to preferred stock of The Windsor Hotel Company, a corporation, made before the articles of incorporation had been issued, was proceeded against by a statutory motion for judgment for the amount of the unpaid assessments, aggregating $4500.00. Denying the validity of the subscription, because not made in the statutory form, the defendant interposed numerous pleas, some of which were rejected, and, trial by jury having been waived, the court tried the case, found for the defendant and rendered judgment accordingly.

· On the 12th day of August, 1912, the promoters of an enterprise having for its purpose the erection of a large modern hotel gave a banquet to certain citizens of Wheeling, at which the purpose and plans of a prospective corporation, to be known as The Windsor Hotel Company, were discussed and subscriptions to the capital stock thereof solicited. Among those in attendance, was the defendant who expressed his willingness to subscribe. On the following day, a paper was presented to him, bearing the subscription of E. B. Carney for 500 shares. Mr. Schenk added his for 50 shares and thereafter many additional subscriptions were secured, making an aggregate of 1750 shares, or more. The paper signed by the defendant reads as follows: "We, the undersigned, hereby subscribe for the number of shares set opposite our names of the Cumulative Seven Per Cent. Preferred Stock in The Windsor Hotel Company, at par value of $100.00 per share to be paid for at the call of the Board of Directors." Though the subscriptions were numerous, only five persons

became incorporators. The articles of incorporation were issued on the 25th day of Oct. 1912, in the names of E. B. Carney, Charles T. Alexander, P. B. Shook, W. B. Irvine and J. D. Merriman, each of whom subscribed in that paper for one share of the preferred stock. Having waived the statutory notice to stockholders, these gentlemen met on the 1st day of November, 1912, and organized the company, by the election of themselves as directors and the adoption of by-laws. At the same meeting, they adopted a resolution directing the purchase of certain real estate, at the price of $115,000.00, to be paid for by $50,000.00 of preferred stock, $50,000.00 of first mortgage bonds of the company and $15,000.00 in cash. Other resolutions were adopted, authorizing issuance of $200,000.00 of preferred stock and sale of $150,000.00 thereof at par, the proceeds to be used in the construction of the new hotel and payment for services in the sale of the stock and bonds, and the issuance of $200,000.00 of common stock and $200,000.00 of bonds, the latter to be secured by a mortgage on the property of the company. The board of directors were authorized to contract for the construction of the hotel building upon the property purchased. Another resolution authorized said board to lease the hotel property to another prospective corporation, The Hotel Windsor Operating Company, and to deliver to E. B. Carney, Charles T. Alexander, The Valley Investment Co. of Youngstown, Ohio, and the Fidelity Investment & Loan Association of Wheeling, W. Va., the $200,000.00 of common stock, in equal shares, for their services in the promotion of said operating company. Upon the adjournment of the stockholders meeting, the board of directors met and ordered an assessment of 100% upon all the subscriptions to the preferred stock of the company, payable in installments of 10% as used in the construction of the hotel building, and the treasurer was authorized to fix the times of payment and give notice thereof to the stockholders. Nine assessments of which the defendant had notice were made, but he refused to pay any of those made against him.

While the constating articles of a corporation are prescribed, and the rights of stockholders defined, by law, the courts in most jurisdictions hold preliminary contracts of subscription to the capital stock of corporations may be made in

advance of the organization thereof. Such a contract, however, does not constitute the subscriber a stockholder in the technical and full sense of the term. According to some authorities, the subscription is held to be a continuing offer to take stock, which becomes binding on the organization of the company. Some courts say the offer is revocable until the organization has been affected. Others say it is irrevocable. In a few instances, such contracts have been held invalid, upon the theory of an implied repeal of all common law applicable to stock subscriptions, by the enactment of a comprehensive statutory system of organization, which is deemed to have taken the place of the common law and to be exclusive. But, in those instances in which it has been so held, language was found in the statute indicating intent to make the statutory method exclusive. Helliwell, Stock and Stockholders, Sec. 43. Among the decisions regarded as so holding is *Greenbrier Industrial Exposition* v. *Rodes*, 37 W. Va. 738. In the opinion in that case, there are general expressions which may be regarded as importing invalidity of all subscriptions made in any manner different from that prescribed by the statute. This view, however, is not consistent with the decision in the *Greenbrier Industrial Exposition* v. *Squires*, 40 W. Va. 407, which obviously treats the informal subscription as being merely voidable, not absolutely void. Rodes did not ratify and confirm his subscription, after the organization of the company, by conduct, but Squires did. The former was released and the latter held upon his subscription. The peculiar state of facts in both, differing very materially from those presented here, fully justified the decisions. Each of the subscriptions was made in a special manner. It was a technical one in the articles of incorporation, and the act of subscription was incomplete, the law requiring an acknowledgment by each subscriber, which, in those instances, was omitted. The subscription involved here was informal, nontechnical and complete, if a valid subscription can be made in the manner in which it was made. According to the great weight of authority throughout the country, such a subscription is conditional and revocable, but nevertheless binding, if the conditions are complied with, and it is not revoked. *Stuart* v. *Valley Railroad Co.*, 32 Gratt. 147; Helliwell on

Stocks and Stockholders, Sec. 41; Clark and Marshall on Corporations, Sec. 439c; Cook on Corporations 75; Johnson on Corporations, Sec. 1170.

Though our statutes prescribe the manner of creating and organizing corporations, with a considerable degree of minuteness, they are wholly silent on the subject of antecedent informal subscriptions or agreements to organize corporations. The right of individuals to bind themselves to form a corporation, or take stock in a corporation to be formed by others, if any, is not nullified by any terms of the statute. Being one for the execution of a lawful purpose, an agreement to organize a corporation, or to take stock in one, seems to fall within the broad liberty of contract allowed by general law, unless expressly or impliedly prohibited by statute. Even in those states in which it has been held that a subscription can be made only in the statutory mode, the ground of the decisions is that the statute either expressly or impliedly prohibits a subscription in any other form. This view necessarily implies the validity of the subscription and the right to make such a contract, unless the statute denies it. In all those jurisdictions in which subscriptions made in advance of organization of the corporation are held valid and binding, the right is directly affirmed.

Not less apparent than the legal right to take prelimary subscriptions, is the utility of the procedure. The procurement of articles of incorporation and the organization effected under them involve labor and expense. Hence it is both advantagous and desirable, to have a guaranty of the success of a proposed organization before entering upon it. This is no more than an ordinary business precaution, the right to which ought not to be denied in the absence of a legal prohibition thereof.

As the subscription involved here was not revoked in any manner prior to the organization of the corporation, it is unnecessary to enter upon any inquiry as to whether or not it was revocable. The subscriber expressed no dissatisfaction with his proposal, if such it was, and did not signify any intention to withdraw it, until after the corporation had been organized and the first assessment made against him. Even then, he made no express revocation. He did nothing more

than express his dissatisfaction with the manner in which the organization had been affected and what had been subsequently done. Without deciding the question, it is deemed not inappropriate, however, to suggest what seems to be a lack of any legal impediment to a conclusion that the subscription was irrevocable. Read in the light of the purpose expressed or indicated by them, the circumstances and situation of the parties, the subscriptions can be fairly interpreted as constituting an agreement among the subscribers to form a corporation, and a consideration for each subscription may be found in the benefit conferred upon the subscriber by the others, or the detriment to which each subscriber subjects himself for the benefit of the others. *Kimmins* v. *Wilson*, 8 W. Va. 584. Considering the subscription as an offer to take stock in the corporation, the consideration just indicated would render it irrevocable, under well settled legal principles. Though, in a sense, unilateral, an option or offer founded upon a valuable consideration is not revocable. *Rease* v. *Kittle*, 56 W. Va. 269. If this principle is applicable, and no reason is perceived why it should not be, the subscription is irrevocable, because founded upon a valuable consideration. If it is an irrevocable offer, acceptance by organization of the corporation converts it into contract between the subscriber and the corporation upon which either of the parties may sue. If it is a contract among the subscribers, each subscription being founded upon the others as consideration therefor, a contract is thus made for the sole benefit of the corporation. The subscribers do not promise to pay one another. On the contrary, each promises to pay the corporation the amount of his subscription and no other person. The promise is clearly one for the sole benefit of the corporation to be formed and brings it within the scope and operation of sec. 2, ch. 71, Code, serial sec. 3740. That the corporation had, at the date of the contract, only a potential existence, seems to be immaterial. Upon these principles, the Minnesota court and others hold an antecedent subscription irrevocable.

On the contract of subscription so completed, whether regarded as a contract among the subscribers for the benefit of the corporation or as a continuous offer to subscribe, accepted by the corporation, the statute gives a right of action for the

amount thereof.  Sec. 33 of ch. 53 of the Code, serial sec. 2866.  This makes it a contract for the payment of money, founded upon a sufficient consideration, admission into the corporation as a stockholder.  Failure to pay the amount subscribed is not therefore, a mere breach of a contract to take stock, giving right of action for damages only.  While the provisions of the statute for enforcement of payment of subscriptions apply in terms to subscriptions made in the statutory mode, it is to be remembered that informal subscriptions are made in view of these provisions and with expectation, on the part of the subscriber, of exactly the same status in the corporation as if his subscription were made in strict conformity with statutory regulations.  Such regulations are clearly within the contemplation of the parties and necessarily become a part of the contract in its completion and operation.

From the conclusion just stated, it manifestly results that the subscription is a conditional one.  It is not a contract merely for the payment of money to the corporation, but one also for admission of the subscriber into the corporation as a stockholder.  To avail itself of the promise to pay the money, the corporation or the incorporators must comply with this condition.  The law contemplates and guarantees participation by the stockholders in the organization of the corporation.  After the certificate of incorporation has been issued and before organization, or election of the board of directors, additional shares of stock may be disposed of under the superintendence of such persons as those holding the majority of the shares may appoint.  Sec. 16, ch. 54, Code, serial sec. 2909; Sec. 23 of ch. 53, Code, serial sec. 2856.  No reason is perceived why those holding a majority of the shares subscribed for in the certificate, may not accept, on behalf of the corporation, the subscription made before issuance thereof.  Having the power to take subscriptions for new and additional stock, they certainly have the lesser power to accept subscriptions already made in an informal manner, and, if they desire to hold such informal subscriptions, it is their duty to accept them and thus admit the new subscribers into the corporation, and afford them an opportunity to take part in the organization.  They are not technically stockholders

until the first installments of 10% of their subscriptions have been paid. Sec. 26, ch. 53, Code, serial sec. 2859. Fairly construed, these subscriptions are agreements to pay on admission of the subscribers into the corporation before organization, not subscriptions to the stock of the corporation after organization. "It appears from the complaint that, at the time of this subscription, the company was fully organized, so that it does not stand upon precisely the same footing as a subscription made prior to, and for the purpose of perfecting, the organization. Such a subscription gives to the subscriber an interest in the corporation, and the right to take part in organizing it." *Railroad Co.* v. *Robbins*, 23 Minn. 439. "There is a substantial difference between an increase of capital and the filling up of one both authorized and required * * * When the subscription to formative stock precedes the creation of the body corporate which will ultimately issue the certificate, there is, of necessity, at the time such subscriptions are entered into, no corporation in existence with which a contract could be made. The subscribers, as a consequence, and for the very purpose of effecting an organization, become stockholders by the mere act of subscribing, if there are no conditions precedent prescribed, and they are thereby invested with the privileges and subjected to the liabilities incident to that relation. The subscribers, in the absence of any statutory restrictions, acquire by such a subscription an interest in the body corporate and a right to participate in its organization." *Railroad Co.* v. *Hambleton*, 77 Md. 341. The genuine equity of this proposition appears from the mere statement thereof, and its consistency with the legal rules of interpretation of contracts cannot be doubted. Though not technically made under or within the statute, as has been stated, the contract of subscription is made with the statute in plain view and with full expectation that the execution or operation thereof will be within and under it. Hence the statute becomes as much a part of the contract, as if it had been made technically under the statute.

Having misapprehended the law applicable to the subject and, in consequence thereof, misconstrued the contract of subscription, the incorporators of The Windsor Hotel Com-

pany failed to comply with the conditions of the subscription. They did not afford the subscriber an opportunity to pay the statutory installment of 10% thereof, so as to make him technically a stockholder and entitle him to notice of the organization and an opportunity to participate therein. Five of the subscribers took out the certificate of incorporation, without any notice to the other subscribers, paid their own initial installments, waived the statutory notice of the first meeting of stockholders, met as stockholders, elected a board of directors and fully determined the policy of the corporation. This may not have been materially prejudicial to the subscriber. Whether it was or not, it is unnecessary to inquire. Under a proper construction of the contract, he was legally entitled to participate in the organization. Tender of an opportunity to do so was a condition precedent to the right of action on his subscription and also to the right of the corporation to recover the amount subscribed. The construction placed upon the contract by the corporation, if accepted and upheld, would open the door wide for the perpetration of all sorts of fraud upon antecedent subscribers to stock of prospective corporations.

None of the pleas interposed specifically set up non-compliance with this condition, as matter of defence, but the procedure adopted for recovery of the subscription is an informal one, and plea No. 1 denies, in general terms, that there is any thing due from the defendant on account of the matters set forth in the notice. This is tantamount to a plea of non-assumpsit or *nil debet* and raised the general issue. The notice does not reveal the antecedent character of the subscription, but it appears by the evidence adduced in support of the motion. Had the notice fully stated the nature of the subscription, it would have been necessary to have averred compliance with the condition and then to have proved performance thereof. An absolute and unconditional subscription having been averred, as the ground or basis of the motion, and the proof having disclosed a conditional one, as well as nonperformance of the condition, no right of recovery has been shown. The notice could probably be amended, *Kunst* v. *Findley et als.*, 73 W. Va. 152, 80 S. E. 136, but, in view of the evidence, an amendment would avail nothing.

Assuming, without deciding it, that the doctrine of repleader would apply in a proceeding of this sort, the plaintiff could not invoke it, for a repleader is not grantable in favor of the party who makes the first fault of pleading which occasions the immaterial issue. 18 Ency. Pl. & Pr. 492.

For the reasons stated, the judgment complained of will be affirmed.

*Affirmed.*