# CHARLESTON.

CLARKSBURG BOARD OF TRADE LAND COMPANY v. DAVIS.

Submitted October 26, 1915. Decided November 2, 1915.

1. EVIDENCE—*Parol—Subscriptions—Corporate Stock.*

   The general rule that evidence of previous or contemporaneous negotiations, stipulations, or terms of agreement, is not admissible to vary or add to a contract, is applicable to written contracts of subscription to the capital stock of a corporation. (p. 73).

2. CORPORATIONS—*Subscriptions to Capital Stock—Binding Effect—Consideration.*

   Such a contract of subscription to the capital stock of a corporation, purporting to be made between the subscribers and each with the other, and with the corporation to be formed, and to bind them severally and not jointly, is supported by a sufficient consideration, and when accepted by the corporation organized pursuant thereto, is binding on the subscribers signing such contract. (p. 73).

3. SAME—*Powers—Purchase and Disposition of Land.*

   Corporations organized under the laws of this state to purchase land and donate it, or otherwise dispose of the same, in order to promote industrial enterprises, are not prohibited by section 3, chapter 52, serial section 2813, Code 1913, providing that, "No corporation shall be incorporated for the *sole* purpose of purchasing real estate in order to sell the same for profit." (p. 74).

4. SAME—*Subscription to Capital Stock—Release of Subscriber.*

   If the objects and purposes of a corporation, as set forth in its certificate of incorporation, are radically and inconsistently different from the objects and purposes set forth in the preliminary agreement of subscription to its capital stock, a subscriber thereto, without his subsequent consent or agreement, is not bound to such corporation for the amount of his subscription. (p. 75).

5. SAME.

   A case in which the rule just stated is properly applicable to the relief of a subscriber to the capital stock of the plaintiff company. (p. 76).

   (WILLIAMS and LYNCH, JUDGES, absent.)

Error to Circuit Court, Harrison County.

Action by the Clarksburg Board of Trade Land Company against Edgar W. Davis. Judgment for plaintiff, and defendant brings error.

*Reversed and entered here.*

*J. E. Law,* for plaintiff in error.

· *Steptoe & Johnson,* for defendant in error.

Miller, Judge:

On notice by plaintiff to defendant, pursuant to statute, for judgment against him, for five hundred dollars, being fifty per cent. of his subscription to the capital stock of plaintiff,. and on the trial of the issues joined on defendant's plea of non assumpsit, the jury found for defendant, which verdict on its motion the court set aside and awarded plaintiff a new trial.

By the preliminary "Subscription Agreement", sued on and introduced in evidence by plaintiff, the undersigned, including with numerous other subscribers, the defendant Davis, thereby mutually agreed, each with the other, and with the corporation thereafter mentioned, severally and not jointly, to take the number of shares set opposite their respective signatures thereto of the capital stock of a "corporation to be organized under the laws of the State of West Virginia, to be known as SOUTHERN LANDS COMPANY, or by such other appropriate name as might be selected by the incorporators thereof", for the purpose of purchasing, taking title to and developing, improving, selling and otherwise disposing of certain lands known as the G. W. Southern farm, of approximately two hundred and thirty acres, near the City of Clarksburg, Harrison County, West Virginia.

And they thereby further mutually agreed that the capital stock of said corporation should be one hundred and twenty five thousand dollars, divided into twelve hundred and fifty shares, of the par value of one hundred dollars each, and thereby also severally promised . to and agreed to pay on demand of the directors of said corporation, fifty per cent. of the par value of the shares respectively subscribed by them and twenty five per cent. thereof in one year and a like twenty five per cent. thereof in two years after the date of the incorporation of said company, or at such later times as· said directors should call for the same.

And it was thereby also further mutually agreed that of the lands so acquired the board of directors might reserve forty

acres more or less for industrial sites, to be sold, donated or otherwise disposed of for such purposes as the said board of directors might deem most desirable, and that after setting off said acreage for industrial sites the remainder should be laid off into lots, with suitable streets and alley lines, grades, and improvements, and said lots sold at such prices as said board of directors might deem reasonable; provided, however, that each and every subscriber thereto and to the stock of said company should be entitled to apply the par value of the stock subscribed by him upon the price of, and in payment for one or more of said lots as he might select, the same to be given as a bonus with his stock; the balance of said purchase price to be evidenced by one or two year notes for equal parts of said balance with interest from date, and a vendor's lien reserved, if any balance there should be, the company to execute a good and sufficient deed to the subscriber for such lot or lots. But that in the event the subscriber should fail to so select and pay for the lot or lots to which he might be entitled within six months from the date of said incorporation, or of his subscription, if subsequent thereto, then his right to said lot-bonus should cease and determine and be thereby entirely forfeited.

And it was further thereby understood and agreed that any five or more of the subscribers thereto might incorporate said company, *making such provision therein, not inconsistent therewith,* as they should deem advisable; and further that the subscriptions thereto should become operative and binding immediately upon such incorporation, provided that the board of directors of said company, when elected, might reject any subscriptions for the stock of said company.

The several grounds of defense relied on below, and here on writ of error, summarized, are: (1) That defendant's subscription was conditional, not by any of the terms of the subscription contract, but by oral agreement with one of the members of the committee designated to solicit the subscription, that defendant should pay his subscription with his note, and that by the subsequent rejection of his note unless endorsed by his wife, and returned to him for that purpose, and which he declined and destroyed the note, the directors thereby elected to exercise their right given by the terms of

the contract, to reject his subscription, thereby discharging him; (2) that the agreement being between persons or individuals alone to take stock in the company when organized is not an agreement with the corporation itself nor one which the corporation can specifically enforce; (3) that the purposes for which it was proposed to form the corporation, as set out in the said subscription agreement, are such as are prohibited by the statute; and, (4) that the corporation organized, and the purposes for which it was organized, are not the same as called for by the agreement, and in which defendant agreed conditionally to take stock.

And the errors assigned and relied on here are, first, the setting aside of the verdict for defendant and awarding plaintiff a new trial; second, refusing to enter up final judgment on the verdict for defendant; and, third, that the court erred in other particulars on the trial, but in view of the action of the court on the demurrer to the evidence, rendered harmless thereby.

To affirm the defendant's first proposition would be to admit the corollary proposition that the terms of a written contract of subscription to the capital stock of a corporation may be varied or contradicted by parol evidence, and that an oral preceding or contemporaneous agreement may be engrafted upon it. The general rule applicable to contracts generally is applicable also to contracts of subscriptions of this character, namely, that parol evidence of previous or contemporaneous negotiations, stipulations, or terms of agreement, is not admissible to vary or add to the contract, and under this general rule any condition in a subscription to the capital stock of a corporation must be inserted in the contract in order to be effectual. Defendant's contract being, therefore, an unconditional one, the rejection of his note, unless signed by his wife, cannot be construed as a rejection of his subscription to the capital stock, and the exercise by the directors of the right of rejection provided for in the subscription contract. 1 Cook on Corporations, (7th ed.) section 137, p. 417; *Little Kanawha Navigation Co.* v. *Rice,* 9 W. Va. 637; *Home Gas Co.* v. *Window Glass Co.,* 63 W. Va. 266.

The second proposition of defense has been sufficiently negatived by this court in *Kimmins* v. *Wilson,* 8 W. Va. 584;

*Rease* v. *Kittle,* 56 W. Va. 269; *Greenbrier Industrial Exposition* v. *Rodes,* 37 W. Va. 738; and in the recent case of *Windsor Hotel Co.* v. *Schenk,* 76 W. Va. 1, 84 S. E. 911, and we need not here further expatiate on this question. The record shows that defendant's subscription was duly accepted by the corporation, and no point is made by defendant that he was denied any right in the organization of the corporation, so as to relieve him from his contract of subscription.

Defendant's third proposition is that the purpose of the proposed corporation, set out in the subscription contract, is one prohibited by statute, and that for this reason his contract is void and unenforceable. Section 3, chapter 52, serial section 2813, Code 1913, among other things, provides: "No corporation shall be incorporated for the *sole* purpose of purchasing real estate in order to sell the same for profit." There is nothing in the subscription contract, as we have seen, nor in the charter of the company, obtained pursuant thereto, showing that the *sole* purpose of the corporation was to buy and sell real estate for profit. The manifest purpose, as disclosed in the contract of subscription, was to acquire land in order to make use thereof in securing the establishment of industrial enterprises in or about the City of Clarksburg. The name finally chosen also implies this purpose. There is no provision in any of the incorporation papers pointing to a profit-making enterprise. Provision is made for donating a large portion of the land to be acquired to industrial purposes, and for allowing the subscribers to acquire lots, on certain terms, with their stock, and it is doubtful if a dollar of profit was contemplated in the organization of the corporation. We think there can be no merit in this defense, and we are obliged to deny its efficacy.

The fourth and last ground of defense presents the only serious question in the case. That the name of the plaintiff is different from that mentioned in the contract of subscription is immaterial, for a change in the name by those authorized to obtain the charter or become the incorporators, was provided for in the contract itself, and the subscribers were bound thereby, and to the name that was chosen, and by which according to the charter obtained, the corporation was to be known.

But it is contended that the purposes of the incorporation
set out in the charter are radically different from those to
which defendant subscribed in his contract of subscription,
and that he is not bound by that subscription to take and
pay for stock in the plaintiff corporation.  As described in its
charter:  ''The objects and purposes for which this corpora-
tion is formed are as follows:  For the purpose of protecting,
fostering, and developing the commercial, manufacturing and
industrial interests of the city of Clarksburg and the County
of Harrison; of buying, owning, leasing and operating coal,
oil, gas and timber lands and other real estate and marketing
and selling said products; of laying out town sites and town
lots and selling the same; of mining, boring and drilling for
coal, oil, gas and other minerals and marketing the same, and
manufacturing and marketing coke and other by-products
thereof; of laying, maintaining, and operating pipe lines for
the transportation of oil, gas and water; of owning, and
operating saw mills, brick yards and foundries for the manu-
facturing of lumber, brick and other building supplies and
articles composed in whole or in part of iron and steel; of
constructing, owning and operating glass factories or factories
for the manufacturing of zinc, carbon, gasoline, cement, furni-
ture and like purposes and the marketing of such products;
of building, owning, leasing, operating and selling street rail-
ways and other railroad lines operated by steam, electricity or
other motive power; of manufacturing and vending by light
and power, electricity and artificial gas, and maintaining pipe
lines or other means of transporting the same; of building
houses and renting or selling the same, and of constructing,
buying or leasing hotels and conducting the same; of con-
structing, maintaining, owning and operating a general system
of water works and sewerage for domestic and manufacturing
or other purposes, including the laying of pipe lines thereof
and the vending of the water to the public; together with all
such and further rights, privileges and franchises that are
or may become proper, necessary or convenient to the further
and complete carrying out and enjoyment of the particular
franchises herein granted.''

It is apparent that the objects and purposes of the corpora-
tion are a decided enlargement upon those set forth in the

contract of subscription. In the contract the purpose expressed was to purchase, take title to, develop, improve, sell, and otherwise dispose of the Southern farm of two hundred and thirty acres; but ·a further provision therein, describing more in detail how the land so to be acquired was to be disposed of, shows that the main object was to promote industrial enterprises, and, to that end, the final provision of the contract was, that the incorporators might make any provision in the charter they should deem advisable not inconsistent with the contract of subscription.

So we think the question of decisive importance is, are any of the objects and purposes of the incorporation, set forth in the charter, inconsistent with those stipulated or implied in the subscription agreement? The law seems to be well settled that when the certificate of incorporation varies materially from the preliminary subscription agreement the subscriber is discharged, for he cannot be required to engage or invest his money in an enterprise or business to which he did not give his consent. 1 Cook on Corporations, (7th ed.) section 54, citing our cases of *Greenbrier Industrial Exposition* v. *Rodes, supra; West End Real Estate Co.* v. *Nash,* 51 W. Va. 341; 1 Thompson on Corporations, (2nd ed.) sections 535, 536.

Keeping in mind then that the plain purpose, manifested by the terms of the contract of subscription, was to acquire the Southern farm, and by donation of a part of it, and dividing the residue into lots and. disposing of the same to the subscribers or otherwise, ·as set forth, was to promote manufacturing and industrial enterprises in and about the city of Clarksburg, it may be implied perhaps that some of the objects mentioned in the charter, and not specifically included in the contract, fall reasonably within objects to be obtained. But we do.not see how, even by the application of the most liberal rules of construction, the acquisition of the Southern farm and the disposition of it as provided in the contract, or for the purpose of protecting, fostering and developing the commercial, manufacturing and industrial interests of the city of Clarksburg, and Harrison County, fairly implied from the contract, and as set forth in the paragraph in the charter relating thereto, could include the ''buying, owning, leasing and operating coal, oil, gas and timber lands''; or the busi-

ness of "mining, boring and drilling for coal, oil, gas and other minerals and marketing the same"; or of "manufacturing and marketing coke and other by-products thereof"; or of "laying, maintaining, and operating pipe lines for the transportation of oil, gas and water"; or of "owning, and operating saw mills, brick yards," foundries, etc.; or of "constructing, owning and operating glass factories or factories for the manufacturing of zinc, carbon, gasoline, cement," etc., and other objects mentioned, objects which we think wholly inconsistent with the objects expressed in the contract of subscription. No doubt some or all of the additional enterprises proposed by the charter would tend to build up any city or community; but all these could not have been reasonably contemplated in the main object of buying the acreage mentioned, and disposing of it as proposed, to induce others to engage in one or all of the other objects set forth in the charter. The scope and sweep of these charter provisions are too broad, and it seems to us are wholly inconsistent with the limited objects of the contract, and fall plainly within the inhibition of inconsistent objects excluded by the terms thereof. For illustration of the proper applications of the rule of law invoked by defendant, we refer to 1 Cook on Corporations, section 194, and cases cited in notes.

But it is contended finally that the defendant by participating in the organization of the corporation as a stockholder, a fact not shown, and by giving or proposing his note in payment of the stock subscribed for by him, waived any defect in or enlargement of the charter objects, and that he thereby became bound for his subscription to the capital stock. But 1 Cook on Corporations, section 194, above referred to, on the authority of the cases cited in note, denies such effect to the subscriber's actions when it appears that he did not know of the changes made in the charter. So we do not think that defendant has waived his rights.

On consideration of all which we are of opinion that the judgment below is erroneous and must be reversed, the verdict of the jury reinstated, and judgment entered here upon the verdict for defendant, and our order will so provide.

*Reversed and entered here.*